Andres Ortiz, Esq.
Shouse Law Group
5670 Wilshire Blvd., Suite 1350
Los Angeles, CA 90036
P: 213-298-1078
F: 310-496-1286
andres@shouselaw.com

Attorney for the Defendant

Gloria Bahena de Sotelo

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Civil No. |
| Plaintiff, | Criminal No.  12-CR-0061-JAH |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES; AND EXHIBITS IN SUPPORT OF PETITION FOR WRIT OF ERROR CORAM NOBIS** |
| GLORIA BAHENA DE SOTELO, | |
| Defendant. | |

# **TABLE OF CONTENTS**

I.      INTRODUCTION…………………………………………………………1

II.     JURISDICTION AND VENUE……………......……………………………1

III.    FACTUAL AND PROCEDURAL HISTORY……………………………1

IV.     ARGUMENT………. …………………………………………...……4
        A. NO MORE USUAL REMEDY IS AVAILABLE……………..………5
        B. VALID REASONS EXIST FOR NOT ATTACKING THE
           CONVICTION EARLIER……………………………………………5
        C. ADVERSE CONSEQUENCES EXIST FROM THE CONVICTION
           SUFFICIENT TO SATISFY THE CASE OR CONTROVERSY
           REQUIREMENT OF ARTICLE III…………………………………6
        D. THE ERROR IS OF THE MOST FUNDAMENTAL CHARACTER…6
           1. Counsel's performance fell below an objective standard of
              reasonableness……………………………………………………7
           2. Counsel's performance prejudiced Ms. Bahena de Sotelo…………13
              a. There is a reasonable probability Ms. Bahena de Sotello would
                 have rationally rejected the plea bargain in hopes of an
                 immigration neutral disposition if she had known that
                 deportation was a virtual certainty………………………………14
              b. There is a reasonable probability Ms. Bahena de Sotelo would
                 have rationally rejected the plea bargain because she made a
                 purposeful attempt to avoid deportation…………………………16
              c. There is a reasonable probability Ms. Bahena de Sotelo would
                 have rationally rejected the plea bargain and gone to trial in the
                 absence of a favorable plea deal……………………………………17
           3. Because Ms. Bahena de Sotelo's waiver plea was not voluntary,
              knowing, and intelligent, there is no bar to a collateral attack………19
V.      CONCLUSION………………………………………………………..20

# TABLE OF AUTHORITIES

## CASES

*Boykin v. Alabama*, 395 U.S. 238 (1969) ............................................................. 13

*In re: Bautista*, 115 Cal. App. 4th 229 (2004) ................................................... 16

*INS v. St. Cyr*, 533 U.S. 289, 322 (2001)..................................................... 15, 20

*Missouri v. Frye*, 566 US 134, 141 (2012) ....................................................... 14

*Padilla v. Commonwealth,* 381 S.W.3d 322, 329 (2012) ............................... 14

*Padilla v. Kentucky*, 559 U.S. 356 (2010) ..................................................passim

*Park v. California,* 202 F. 3d 1146, 1148 (2000) ............................................... 7

*People v. Patterson*, 2 Cal. 5th 885 (2017)....................................................... 3

*Strickland v. Washington.* 466 U.S. 668, 692 (1984) ...............................passim

*U.S. v. Chan*, 792 F.3d 1151, 1153 (9th Cir. 2015) ........................................... 4

*United States v. Camey–Arriaza*, No. 3:14–CR–01449–WVG
   (S.D.Cal. May 27, 2014) ................................................................................ 16

*United States v. Godinez–Aviles,* No. 3:14–cr–01531–DHB (S.D.Cal.
   June 3, 2014) .................................................................................................. 16

*United States v. Gonsalez–Sanchez,* No. 3:13–CR–00477–RBB
   (S.D.Cal. Feb. 7, 2013) .................................................................................. 16

*United States v. Jarillo–Ochoa,* No. 3:12–cr–01818–AJB (S.D.Cal.
   May 9, 2012).................................................................................................... 16

*US v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993)......................................... 21

*US v. Akinsade,* 686 F.3d 248, 255 (4th Cir.2012) .......................................... 20

*US v. Bonilla*, 637 F.3d 980, 984 (9th Cir. 2011)................................... 6, 8, 17

*US v. Charles*, 581 F.3d 927, 932 (9th Cir.2009) ............................................ 21

*US v. Choi*, Case No. 4:08–CV–00386–RH, Transcript, Docket No.
   96, at 52 (D.Fla. Sept. 30, 2008) .................................................................. 10

*US v. De la Fuente,* 8 F.3d 1333, 1337 (9th Cir. 1993)................................... 21

*US v. Kwan*, 407 F.3d 1005 (9th Cir.2005) ...............................................passim

*US v. Monreal*, 301 F.3d 1127, 1131 (9th Cir. 2002).........................................1

*US v. Navarro-Botello*, 912 F.2d 318, 321 (9th Cir. 1990) ........................... 20

*US v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994) ............................................... 21

*US v. Raya–Vaca*, 771 F.3d 1195, 1209 (9th Cir.2014) ................................. 16

*US v. Rodriguez-Vega*, 797 F.3d 781 (9th Cir. 2015)..............................passim

*US v. Urias–Marrufo*, 744 F.3d 361, 369 (5th Cir. 2014) ............................. 13

*Washington v. Lampert*, 422 F.3d 864, 871 (9th Cir. 2005)......................... 20

1

2

## STATUTES

18 USC § 3 .................................................................................................... 15
28 USC § 1651(a) ............................................................................................ 1
28 USC § 2255 ................................................................................................ 5
8 USC § 1324 .......................................................................................... passim
8 USC § 1101(a)(43)(N) ............................................................................ 9, 10

## REGULATIONS

8 C.F.R. § 1208.16(c) ...................................................................................... 6
8 CFR § 208.17(b) ......................................................................................... 18
Fed. R. Crim. P. 11 ....................................................................................... 12

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

The defendant/petitioner,[1] Ms. Gloria Bahena de Sotelo seeks to withdraw her guilty plea to 8 USC § 1324 because she was affirmatively misinformed of the immigration consequences of her plea by previous counsel. Ms. Bahena de Sotelo alleges that the error warrants permission for her to withdraw her plea and seek an immigration neutral disposition.

## II.      JURISDICTION AND VENUE

The defendant/petitioner asserts this court has jurisdiction to hear her petition for writ of error coram nobis under the All Writs Act, 28 USC § 1651(a).  As will be discussed, *infra*, the defendant/petitioner is no longer in custody and possesses no other, more ordinary form of relief and as such, seeks this procedural avenue to pursue her rights.  Moreover, the venue is proper in this court because she is bringing the request in the sentencing court.  *See* 28 USC § 1651(a); *and US v. Monreal*, 301 F.3d 1127, 1131 (9th Cir. 2002) (holding that a writ of error *coram nobis* attacking the Iowa conviction may only be brought in the sentencing court). Consequently, this court has jurisdiction and this is the proper venue for the matter.

## III.      FACTUAL AND PROCEDURAL HISTORY

The facts of this case have been largely established in Ms. Behena de Sotelo's writ of habeas corpus.  *See generally*, Doc. 43 p. 2-5.  Ms. Bahena de Sotelo is a native and citizen of Mexico.  *See* Ex. A, ¶1.  Currently, she is a lawful permanent resident and in removal proceedings before the immigration judge in Los Angeles, California.  *Id.*  She has been a permanent resident since 2002.  *Id.*  She is married to a US Citizen as well as has four US Citizen children.  *Id.* at ¶3 Ms. Bahena de Sotelo has resided in the US for nearly 30 years.  *Id.* at ¶16.

---

[1] Throughout the Points & Authorities, the Ms. Bahena de Sotelo may be references as either the petitioner or defendant.

1

Prior to entering the US, Ms. Bahena de Sotelo lived with her maternal grandmother, maternal aunt, and uncle. *Id.* at ¶2. During this time, the defendant/petitioner was constantly sexually abused by her family members. *Id.* After immigrating to the US, Ms. Bahena de Sotelo's traumatic childhood did not stop. *Id.* Specifically, she witnessed persistent domestic violence in her parents' home. *Id.* At 14, Ms. Bahena de Sotelo moved out of her parents' house and moved in with her husband, Jose Joel Sotelo. *Id.* at ¶3. Despite having children at such a young age, she was able to settle into her role as a mother and even return to school. *Id.*

As explained in her previously filed post-conviction motion, Ms. Bahena de Sotelo's world was turned upside down when she was stalked by Mr. Rogelio Ochoa. Ms. Bahena met Mr. Ochoa at a local bar; he pursued her, but she was uninterested. *Id.* at ¶4. After meeting her, Mr. Ochoa was responsible for shooting out the windows in her car. *Id.* at ¶5, *and* Ex. B, Insurance Claim Report. Ms. Bahena de Sotelo accounts numerous other types of harassment and physical abuse that she suffered at the hands of Mr. Ochoa throughout the next years. *See* Ex. A, at ¶4-8. Later, Mr. Ochoa raped Ms. Bahena de Sotelo, as a result of this rape, she became pregnant. *Id.* at ¶6. Because of Mr. Ochoa's connections to a Mexican drug cartel, Ms. Bahena de Sotelo believed him when he said that if she told anyone, he would kill her. *Id.* at ¶7.

In December 2011, Ms. Bahena de Sotelo was approached by a man associated with Mr. Ochoa. *Id.* at ¶7. He instructed her to drive to the US-Mexico Border. *Id.* When they arrived in Mexico, she was forced to take Mr. Ochoa to the US. *Id.* at ¶8. She was apprehended and this case ensued. *Id.* at ¶9.

After taking the plea, she was informed that her plea included agreeing to a stipulated order of removal. *Id.* at ¶12 *and* Ex. C, Declaration from Adelina Sotelo at ¶6. Not wanting to get deported as a result of her crime (and because of the sexual abuse she endured) she fired Mr. Aguirre and hired David Shapiro to

1  represent her during the sentencing phase.  *Id.* at ¶12.  Mr. Shapiro stated that Mr.

2  Aguirre had done a poor job in protecting Ms. Bahena de Sotelo's immigration

3  interests.  *See* Doc. 49, Transcript of Change of Plea and Sentencing Hearing, at 23.

4  Further, Mr. Shapiro removed the stipulated order of removal provision after a few

5  emails with a supervising AUSA.  *Id.*

6      Shortly after retaining Mr. Shapiro, he emailed Adelina, Ms. Bahena de

7  Sotelo's daughter, to let her know that he was able to remove the stipulated order of

8  removal provision from the plea agreement.  *See* Ex. D, Email Exchange Between

9  Adelina[2] and Mr. Shapiro.  Mr. Shapiro stated that removing this provision would

10 give **"*her the best chance in lawfully remaining in this country.*"** *Id.*  He further

11 represented that removing the stipulated order of removal provision would "thus

12 afford[] Ms. Bahena de Sotelo an opportunity to go before an immigration tribunal

13 and at least have them consider the totality of the circumstances to fight her

14 possible removal and/or deportation."  *See* Doc. 36, Def't. Sent. Mem. at 4.  Mr.

15 Shapiro continued to represent his belief that he had improved immigration

16 prospects by removing the stipulated order of removal.  *See* Doc. 49 at 3, 22, 23.

17 Finally, the former defense attorney represented to the court that he informed Ms.

18 Bahena de Sotelo that she *may* be deported as a result of the plea, "[s]he's been

19 advised, obviously that [the prospect of deportation is] something she will have to

20 take up with an immigration judge at the appropriate time when the sentence is

21 complete." *Id.* at 3-4.  As a result of Mr. Shapiro's representations to Ms. Bahena

22 de Sotelo and the court, the defendant believed she would not face virtually certain

23 removal as a result of the plea.  And it was those representations that induced her to

24 plead guilty to the offense.  *See* Ex. A at ¶14.  After the hearing Mr. Shapiro

25 informed the family that if Ms. Bahena de Sotelo retained an immigration attorney,

26 he believed she should be able to remain in the country.  *See* Ex. A at ¶14 *and* Ex.

27

28 [2] Counsel means no disrespect by using Adelina's first name, it is done for convenience so she is not confused with the defendant/petitioner.

3

1  B at ¶9.

2       After Ms. Behena de Sotelo was released from immigration custody, she was

3  transferred to immigration custody where her she was found removable as an alien

4  smuggler and, as a result of the conviction, is barred from discretionary forms of

5  immigration relief.  *Id.* at ¶15.  Ms. Bahena de Sotelo filed a petition for writ of

6  habeas corpus, which was denied on March 10, 2014 and this court denied the

7  certificate of appealability (COA).  She timely filed an appeal to the Ninth Circuit;

8  however, the court did not grant the COA.  Ms. Bahena de Sotelo filed a motion for

9  rehearing en banc, which was denied on February 6, 2015.  On, August 14, 2015,

10 the Ninth Circuit issued a published opinion in *US v. Rodriguez-Vega*, 797 F.3d 781

11 (9th Cir. 2015), which addressed whether a permanent resident received ineffective

12 assistance of counsel after being told that she *could* be deported as a result of

13 pleading to a charge under 8 USC § 1324, when in fact her removal was *virtually*

14 *certain*.  In that decision, the Ninth Circuit came to the opposite conclusion as all of

15 this court's findings.  Because the Ninth Circuit's decision squarely controls this

16 matter, this court should grant coram nobis relief.

17       **IV.   <u>ARGUMENT</u>**

18       A noncitizen who was robbed of effective plea negotiation may request the

19 court to allow her to withdraw her guilty plea because the plea was not knowing,

20 voluntary, and intelligent.  *See U.S. v. Chan*, 792 F.3d 1151, 1153 (9th Cir. 2015)

21 *and US v. Kwan*, 407 F.3d 1005 (9th Cir.2005) *abrogated on other grounds by*

22 *Padilla v. Kentucky*, 559 U.S. 356 (2010).  While the noncitizen may have

23 procedural avenues to vindicate her rights, Ms. Bahena files this writ of error coram

24 nobis.  To establish that Ms. Bahena de Sotelo qualifies for coram nobis relief, the

25 petitioner must show the following four factors:

26       (1) a more usual remedy is not available;

27       (2) valid reasons exist for not attacking the conviction earlier;

28       (3) adverse consequences exist from the conviction sufficient to

satisfy the case or controversy requirement of Article III; and

(4) the error is of the most fundamental character.

*Id.* at 1153 (internal citations omitted).  Ms. Bahena de Sotelo will address these factors in turn.

### A.   NO MORE USUAL REMEDY IS AVAILABLE

In *Kwan*, the Ninth Circuit addressed proving the no more usual remedy prong.  407 F.3d at 1012.  Specifically, panel found that because the petitioner was no longer in federal custody, he was not able to file a writ under 28 USC § 2255; thus, the applicant was no longer able to file for habeas relief.  *Id.*  Because habeas relief was unavailable, the petitioner was without a "more usual remedy" to attack the previous attorney's deficient performance.  *Id.*

The matter at bar is on all fours with *Kwan*.  Ms. Bahena de Sotelo was sentenced to six months prison and two years supervised release on May 7, 2012.  Thus, her custody ended about three years prior to filing this motion; hence, she cannot apply for habeas relief.  Consequently, there is no more usual remedy and the first prong is satisfied.

### B.   VALID REASONS EXIST FOR NOT ATTACKING THE CONVICTION EARLIER

*Kwan* additionally addressed the second requirement, that valid reasons existed for not attacking the conviction earlier.  407 F.3d at 1012.  The panel observed, "[b]ecause a petition for writ of error coram nobis is a collateral attack on a criminal conviction, the time for filing a petition is not subject to a specific statute of limitations.  *Id.* (internal citations and quotations omitted).  In lieu of a specific statute of limitations, the petitioner must show sound or valid reasons for not attacking the convictions previously.  *Id.*

Ms. Bahena de Sotelo timely filed a writ of habeas corpus that was denied by this court because she had been given a *pro forma* warning in the plea agreement that informed her that she *could* be deported as a result of her plea; therefore, there

1  was no ineffective assistance of counsel.[3]  *See* Order denying motion to vacate at 9-

2  11.  After her case was denied, she filed a petition at the Ninth Circuit asking for a

3  certificate of appealability.  After the Ninth Circuit denied her request, she began

4  seeking other options such as seeking a U-Visa because of the sexual abuse she

5  suffered at the hands of former counsel.  To date, Ms. Bahena's U-Visa attorney has

6  requested a FOIA from the Bureau of Prisons, but it has yet to respond.  Currently,

7  the defendant is in immigration court, but has been limited to applying for the

8  United Nations Convention Against Torture (CAT), 8 C.F.R. § 1208.16(c).[4]

9  Clearly, this demonstrates that Ms. Bahena is a woman who has exhausted all

10 remedies before turning back to this court for relief.

### C.    THE ADVERSE CONSEQUENCE SATISFIES THE CASE OR CONTROVERSY REQUIREMENT OF ARTICLE III

13    The court must have jurisdiction to hear the *writ of error of corum nobis* in

14 order to vacate the conviction. To gain jurisdiction the defendant must show that

15 adverse consequences exist from the conviction in order to satisfy the case or

16 controversy requirement of Article III of the US Constitution.  *Kwan*, 407 F. 3d at

17 1011.  A defendant who faces deportation suffers actual consequences from his

18 conviction. *Park v. California,* 202 F. 3d 1146, 1148 (2000). The fact that Ms.

19 Bahena faces deportation as a result of her conviction shows she suffered "adverse

20 consequences" sufficient to meet the case or controversy requirement under Article

21 III.

### D.    THE ERROR IS OF THE MOST FUNDAMENTAL CHARACTER

24    Finally, the claimed error must be of a fundamental character. In *Kwan*, the

25 Ninth Circuit specifically held a writ of error coram nobis can be applied to a Sixth

26 Amendment ineffective assistance of counsel attack for failure to provide a

[3] The denial based on the court's ineffective assistance analysis will be addressed *infra*.

[4] Both *Rodriguez-Vega* and *Bonilla* held that when a noncitizen is confined to a CAT claim, it does not affect the analysis that removal is "virtually certain." 797 F.3d at 786-787 n.3.

constitutionally required immigration advice. 407 F.3d at 1016. To show he received ineffective assistance of counsel, Ms. Bahena de Sotelo must establish that her counsel's performance fell below an objective standard of reasonableness, and that this deficiency in counsel's performance prejudiced her. *Strickland v. Washington.* 466 U.S. 668, 692 (1984). Defense counsel's misadvice was a constitutionally deficient performance of his duty under the Sixth Amendment right to counsel. *See Padilla*, 559 U.S. at 366 (holding advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel); *and Kwan*, 407 F.3d at 1016. Thus, the court has jurisdiction to consider the substance of Ms. Bahena de Sotelo's claim.

### 1. Counsel's performance fell below an objective standard of reasonableness

In *Padilla*, the Supreme Court addressed the national standard for effective assistance of counsel when representing noncitizens. 559 US at 366. The Supreme Court held that criminal defense attorneys have an absolute obligation to affirmatively advise the noncitizen of the risk of deportation that will flow from the plea when counsel can easily identify the consequence. 559 US at 368. The Court observed that certain crimes, by their very nature, will have clear guideposts when determining whether the current charge carries immigration consequences. *Id.* Indeed, if criminal defense counsel can simply read the text of the Immigration and Nationality Act (INA) and determine the offense carries immigration implications, the attorney has an absolute duty to advise the noncitizen of the consequences. *Id.* at 369 ("The consequences of Padilla's plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect."). Equally as important, when a criminal defense attorney informs a noncitizen that a plea *could result in deportation* when it is virtually certain the defendant will be deported, that advisement falls below the objective standard of reasonableness. *US v. Bonilla*, 637 F.3d 980, 984 (9th Cir.

2011) ("A criminal defendant who faces almost certain deportation is entitled to know more than that it is possible that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty.") (emphasis in original); *and Rodriguez-Vega*, 797 F.3d at 786 (same). Failing to do so will satisfy the first prong of the *Strickland* Test.

In *Rodriguez-Vega*, the defendant, who was a permanent resident, was charged with Attempted Transportation of Illegal Alien in violation of 8 USC § 1324(a)(2)(A). 797 F.3d at 784. A violation under 8 USC § 1324(a)(2)(A) is an aggravated felony for immigration purposes. *Id*. She ultimately pled to a misdemeanor attempted alien smuggling charge. *Id*. The noncitizen defendant originally rejected the plea offer because it contained a stipulated order of removal provision. *Id.* at 785. She was presented with another offer where the stipulated order of removal provision was eliminated and the provision was replaced with an advisement that the defendant agrees to the plea despite what immigration consequences may befall her, even "automatic removal from the United States." *Id*. Another provision of the plea confirmed that the defendant discussed the plea with her defense counsel and she understood the substance of the plea. *Id*. During the plea hearing, the judge, tracking the language of the plea provision, informed the defendant that "*potentially* [she] could be deported or removed, *perhaps*." *Id*. (emphasis retained in the original). At her sentencing hearing, defense counsel stated on the record stated that "even though this is a misdemeanor, there is a high likelihood that she'll still be deported. It's still *probably* considered an aggravated felony for purposes of immigration law." *Id*. (emphasis retained in the original). Armed with this knowledge (or lack thereof), Rodriguez-Vega pled guilty to the offense. *Id*.

After being served with a Notice to Appear by immigration officials, she filed a petition to vacate her conviction. *Rodriguez-Vega*, 797 F.3d at 785. The Southern District of California court denied the motion because it found the defense

8

1  counsel adequately advised the defendant prior to taking the plea because she was
2  informed she faced "potential" removal and she was further warned that she faced a
3  "high likelihood" of removal.  *Id.* at 786.  The Ninth Circuit overturned this ruling
4  because the nature of the conviction made it virtually certain that the defendant
5  would be removed as a result of her plea.  *Id.*  In reaching this conclusion the court
6  built on Supreme Court and Ninth Circuit precedent that states where "the
7  immigration statute or controlling case law expressly identifies the crime of
8  conviction as a ground for removal, the deportation consequence is truly clear."  *Id.*
9  (internal quotations and citation omitted).  Because alien smuggling is referenced in
10  the INA, "the deportation consequence is truly clear."  *Id.*  Consequently, the
11  petitioner's removal was "virtually certain" and defense counsel's statements about
12  the possibility the "high likelihood" of removal were insufficient to meet the
13  standard outlined in *Padilla*.  *Id.* at 786-787, 790 ("As Judge Robert L. Hinkle
14  explained, "Well, I know every time that I get on an airplane that it could crash, but
15  if you tell me it's going to crash, I'm not getting on." *US v. Choi*, Case No. 4:08–
16  CV–00386–RH, Transcript, Docket No. 96, at 52 (D.Fla. Sept. 30, 2008).").
17  Essentially, the Ninth Circuit demands two things of all criminal defense attorneys:
18  (1) to determine whether the immigration consequences are obvious and (2) if they
19  are obvious, to inform the client of the virtual certainty of deportation should she
20  accept the plea.
21      Here, in regards to the first consideration, it should have been plainly obvious
22  to counsel that a guilty plea 8 USC § 1324(a)(2)(B) would result in deportation as
23  an aggravated felony under 8 USC § 1101(a)(43)(N) because it is specifically
24  incorporated in the INA.  In her previous habeas petition, Ms. Bahena de Sotelo
25  pointed out that in accordance with Ninth Circuit caselaw at the time that stated
26  when the consequences were obvious because the offense was specifically cross
27  referenced as an aggravated felony.  *Rodriguez-Vega* also confirmed the overall
28  conclusion.  Consequently, Ms. Bahena de Sotelo was entitled to know that her

9

removal was *virtually certain*.

Unfortunately, for the second consideration, the defendant was misinformed about the consequences of the crime. In the Sentencing Memorandum, Mr. Shapiro noted that he was able to remove the stipulated order of removal provision and replace it with an immigration consequences advisement. *See* Doc. 36, Sentencing Memorandum at 3-4. Counsel went on to state that this disposition was more beneficial because it will "[afford] Ms. Bahena de Sotelo an opportunity to go before an immigration tribunal *and at least have them [sic] consider the totality of the circumstances to fight her possible removal and/or deportation*."[5] *Id.* at 4. During the change of plea and sentencing hearing when former counsel was requesting a downward departure, he stated that he believed the defendant could fight a case in immigration court. *See* Transcript of Change of Plea and Sentencing Hearing at 21 ("[Ms. Bahena de Sotelo will] be transferred ultimately over to the immigration officials where she would certainly wish to preserve or seek to remain in the country."). Moreover, like *Rodriguez-Vega*, previous counsel premised the entire reason for amending the plea agreement on the belief that she would have a better chance of remaining in the US without the stipulated order of removal provision. *Id.* at 22-23. Thus, consistently Mr. Shapiro opined that removal was not virtually certain.

Likewise, former defense counsel misled the family into believing that if the stipulated order of removal provision was eliminated, it would allow Ms. Bahena de Sotelo a fighting chance in front of an immigration judge. In an email to the defendant's daughter, former counsel stated:

> Adelina, Good news! I have been able to convince the US Attorney to agree to delete the part of the plea agreement where your mother previously agreed to her removal upon being released from her

---

[5] While Ms. Bahena de Sotelo uses deportation and removal interchangeably, *see Rodriguez-Vega*, 797 F.3d at 786, there is a legal difference between a deportation and a removal. Deportations were executed prior to Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996 and removals occur after the implementation of IIRIRA. For the purposes of this brief, the terms are used interchangeably.

sentence. *This does not mean that she may not have an immigration court fight ahead of her, **but it gives her the best chance in lawfully remaining in this country.***

*See* Ex. D (emphasis added).  Exactly the same as *Rodriguez-Vega*, the supposed "benefit" Ms. Bahena de Sotelo was receiving because the stipulated order of removal provision was meaningless because the crime still rendered her removable as an aggravated felon and ineligible from seeking discretionary relief from deportation before the immigration judge.  Upon reading these representations by former counsel, it is plainly clear that former defense counsel misadvised Ms. Bahena de Sotelo on the immigration consequences of the crime.  It was not communicated to her that her removal was "virtually certain" because she was pleading to an aggravated felony that was expressly cross-referenced in the INA.

Further, in denying the habeas petition even this court recognized, "[t]he record demonstrates Petitioner was informed her guilty plea *would most likely result* in deportation."  *See* Doc. 57, Order Denying Petitioner's Motion to Vacate, p. 8 (emphasis added to the original).  This court further states that previous counsel wrote in the sentencing documents that deportation was "likely." *Id.*  It is plainly obvious that Mr. Shapiro failed to advise the defendant that her chances of removal were virtually certain- though caselaw at the time demanded she be told of the near certainty of the outcome.  Failure adequately inform the client of her chances of removal falls below the objective standard of reasonableness.  Consequently, this advice satisfies the first *Strickland* prong.

Finally, the defendant acknowledges that the court took great lengths to inform her that she *could be* deported as a result of the crime.  However, she renews her claim under the *writ of coram nobis* because the logic underpinning the court's denial has been overturned by the Ninth Circuit.  In *Rodriguez-Vega*, the Ninth Circuit held that a plea colloquy that warns of the possibility of deportation does not remove counsel's obligation to inform the defendant of succinct immigration

consequences.[6]  797 F.3d at 787.  Specifically, the panel observed that the "government's performance in including provisions in the plea agreement, and the court's performance at the plea colloquy, are simply irrelevant to the question whether *counsel's* performance fell below an objective standard of reasonableness. *Id.*  (emphasis in the original and citations omitted).  Essentially, the Ninth Circuit made a distinction between the court's obligation to ensure the plea conforms to basic measures of due process under the Fifth Amendment (*citing to* Fed. R. Crim. P. 11; *see also Boykin v. Alabama*, 395 U.S. 238 (1969)) and counsel's duty under the Sixth Amendment to effective assistance of counsel ("It is counsel's duty, not the court's, to warn of certain immigration consequences, and counsel's failure cannot be saved by a plea colloquy." *US v. Urias–Marrufo*, 744 F.3d 361, 369 (5th Cir. 2014)). *Id.*

In an analogous context, the California Supreme Court crystalized this concept in a similar factual scenario.  In *People v. Patterson*, the California Supreme Court addressed the question of whether a standard immigration advisement under California Penal Code section 1016.5, much like the one given by this court, operates as a bar to post-conviction relief when the attorney provides incompetent advice.  2 Cal. 5th 885 (2017).  The Court held that there is no logical reason why the section 1016.5 advisement would operate as such a bar. *Id.* at 895. In reaching this conclusion, the Court held that the focus of the post-conviction inquiry is not what the trial court told the defendant, but what the defendant knew when entering the plea. *Id.* at 897.

In denying the habeas petition, this court emphasized that it had made efforts to inform Ms. Bahena de Sotelo that she could get deported for the crime. Additionally, it ensured that Mr. Shapiro had time to speak with his client, because he had never gone to see her in person.  While these are laudable actions by this

---

[6] In *Rodriguez-Vega* the District Court gave nearly the same *pro forma* advisement and the immigration consequences provision was substantively similar to Ms. Bahena de Sotelo's.

court, it does not negate the fact that the substance of Mr. Shapiro's conversation with the defendant was inadequate.  Despite the opportunity to speak with her counsel, Ms. Bahena de Sotelo was nonetheless given inaccurate information.  The representations made to her made it seem as if the disposition in her case gave **"*her the best chance in lawfully remaining in this country.*"**  *See.* Ex. D.  The defendant relied on this information to her detriment.  Under the Sixth Amendment, Ms. Bahena de Sotelo should have been able to rely on the advice given to her by former counsel.  *See Padilla*, 559 US at 368-369 (affirming the noncitizen has a right to an accurate immigration advisement *and effective plea negotiation* under the Sixth Amendment) *and Missouri v. Frye*, 566 US 134, 141 (2012) (Holding the Sixth Amendment Right to Counsel extends to all critical phases of litigation, including whether to agree to a plea).  Because this advice (in theory) is based on actual investigation, it should be relied upon over the *pro forma* warnings from this court.  Consequently, former defense counsel's representations fell short of the objective standard of reasonableness and this court should not have denied the motion because the court or the US Attorney warned her that she could have been deported because of the crime.

### 2.    Counsel's performance prejudiced Ms. Bahena de Sotelo

To satisfy the prejudice prong, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Rodriguez-Vega*, 797 F.3d at 788 (Quoting *Strickland* 466 U.S. at 694). This standard of proof is "somewhat lower" than the common "preponderance of the evidence" standard. *Strickland*, 466 U.S. at 694. To obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances. *Padilla*, 599 US at 372. The defendant must demonstrate that he rationally would have insisted on a trial, not that an acquittal at trial was likely. *Padilla v. Commonwealth,* 381 S.W.3d 322, 329 (2012). In determining whether a

1  defendant's decision to insist on a trial would have been rational; the immigration

2  consequences of a guilty plea can be the predominate factor. *Id.* at 329.

3      In *Rodriguez-Vega*, the court held the defendant demonstrated a reasonable

4  probability that she would have gone to trial or attempted to negotiate a different

5  plea agreement not resulting in her removal. 797 F.3d at 789. In reaching this

6  determination, the Court identified three ways the defendant could demonstrate the

7  reasonable probability that she would have rejected the plea. *Id.* at 787-789.  First,

8  the Court assessed whether there was a possibility that the defendant could have

9  negotiated an immigration neutral plea based on outcomes in similar cases.  *Id.* at

10 788.  Second, the court held a defendant can demonstrate a purposeful attempt to

11 avoid immigration consequences.  *Id.* at 789.  Finally, the defendant can

12 demonstrate that she would have gone to trial, in the absence of a more favorable

13 plea agreement by demonstrating a particular emphasis on not being deported.  *Id.*

14
15      **a.  There is a reasonable probability Ms. Bahena de Sotello would have
       rationally rejected the plea bargain in hopes of an immigration
       neutral disposition if she had known that deportation was a virtual
16     certainty**

17
18      It is completely rational for a noncitizen who desires to avoid deportation to

19 seek an alternative disposition that will allow her to avoid mandatory banishment

20 from his adopted country.  Thus, a noncitizen may agree to a disposition that

21 exposes her to more jail time, in exchange for a mandatory deportation.  *See*

22 *Padilla*, 559 U.S. at 368 ("[P]reserving the client's right to remain in the United

23 States may be more important to the client than any potential jail sentence."

24 (quoting *INS v. St. Cyr*, 533 U.S. 289, 322 (2001) (alteration omitted)); *and e.g. In*

25 *re: Bautista*, 115 Cal. App. 4th 229 (2004) (holding that in California a criminal

26 defense attorney has the obligation to offer to "plead up" to a more serious criminal

27 charge in order to avoid immigration consequences).  In *Rodriguez Vega*, the Ninth

28 Circuit reviewed evidence of other cases where the indictment contained a similar

14

charge to the defendant's but government agreed to a disposition that avoided immigration consequences.  797 F.3d at 788 n.7.[7]  Because of these cases, the Court found a reasonable probability that the defendant could negotiated a similar plea that did not require removal.  *Id.* at 789 *and US v. Raya–Vaca*, 771 F.3d 1195, 1209 (9th Cir.2014) (statistical evidence regarding proportion of aliens receiving relief in conjunction with individualized evidence supports finding of a plausible basis for alien's relief).

The matter at bar is virtually indistinguishable to the cases identified by *Rodriguez-Vega*.  Because these cases, all originating from the Southern District of California involved alien smuggling charges and were eventually plead to a violation of 18 USC § 3, accessory after the fact, it is certainly reasonable to believe that the defendant would request the same or similar disposition.  Additionally, consistent with *Raya-Vaca*, in the original habeas petition, Ms. Bahena de Sotelo included an expert declaration from Federal Public Defender Norma Aguilar.  *See* Doc. 53, Ex. A.  In the declaration Ms. Aguilar stated that it was in her experience that the US Attorney's Office would allow immigration neutral or less damaging immigration dispositions in analogous situations.  *Id.*

Moreover, Mr. Shapiro remarked on his demonstrated skill in negotiating immigration neutral dispositions after being retained as counsel.  These skills make it even more reasonable the defendant would believe her attorney could have secured an immigration neutral disposition for her.  Unfortunately, for the defendant, she was not given the critical information she needed to make an informed decision and she was prevented from seeking an immigration neutral

---

[7] The specific identified cases were: *United States v. Gonsalez–Sanchez,* No. 3:13–CR–00477–RBB (S.D.Cal. Feb. 7, 2013), ECF No. 14; Judgment, *Gonsalez–Sanchez,* No. 3:13–CR–00477–RBB (S.D.Cal. Mar. 8, 2013), ECF No. 32; Information, *United States v. Camey–Arriaza,* No. 3:14–CR–01449–WVG (S.D.Cal. May 27, 2014), ECF No. 20; Judgment, *Camey–Arriaza,* No. 3:14–CR–01449–WVG (S.D.Cal. June 11, 2014), ECF No. 38; Information, *United States v. Godinez–Aviles,* No. 3:14–cr–01531–DHB (S.D.Cal. June 3, 2014), ECF No. 28; Judgment, *Godinez–Aviles,* No. 3:14–cr–01531–DHB (S.D.Cal. July 1, 2014), ECF No. 40; Indictment, *United States v. Jarillo–Ochoa,* No. 3:12–cr–01818–AJB (S.D.Cal. May 9, 2012), ECF No. 17; Judgment, *Jarillo–Ochoa,* No. 3:12–cr–01818–AJB (S.D.Cal. Feb. 5, 2013), ECF No. 87.

1  disposition.

2  **b. There is a reasonable probability Ms. Bahena de Sotelo would have**
   **rationally rejected the plea bargain because she made a purposeful**
3  **attempt to avoid deportation**

4  In *Rodriguez-Vega*, the Ninth Circuit also held a petitioner can demonstrate a

5  reasonable probability that she would have rejected the plea offer by demonstrating

6  a purposeful attempt to avoid a disposition that carried immigration consequences.

7  797 F.3d at 789. In *Rodriguez-Vega*, the panel found that the defendant

8  demonstrated a purposeful attempt to avoid immigration consequences by

9  demonstrating a "single-minded" focus on achieving a disposition that would not

10  result in deportation. *Id.* Specifically, the court found it significant that the

11  defendant initially rejected a plea deal that would have included a stipulated

12  removal and only plead after the removal provision had been eliminated from the

13  plea agreement. *Id.* Moreover, she took a disposition that she was led to believe

14  would not carry virtually certain immigration consequences. *Id.* Further, in

15  *Bonilla*, the court held prejudice can also be demonstrated by actions of the family

16  to assist the defendant in avoiding deportation. 637 F.3d at 984 ("Bonilla, through

17  his wife, contacted his lawyer and the investigator at the Federal Public Defender's

18  Office to ask whether he could be subject to deportation proceedings in connection

19  with his plea demonstrated that this was a matter of considerable importance to

20  him.").

21  Here, the factors articulated in *Rodriguez-Vega* are all present in the matter at

22  bar. For example, Ms. Bahena de Sotelo signed to an amended plea agreement after

23  she was notified that the stipulated order of removal was taken out of the plea

24  agreement. Mr. Shapiro indicated that removing this provision was important to

25  her and removing the stipulated order of removal provision was a critical part of his

26  litigation strategy. *See* Doc. 36 at 4. Ms. Bahena de Sotelo was led to believe

27  removing this provision would allow her to present a case to the immigration court

28  where it would "*consider the totality of the circumstances.*" *Id. and also see*, Ex.

16

D.  This advice was flatly incorrect and like *Rodriguez-Vega*, where she was led to believe the misdemeanor conviction would offer her a better opportunity to remain in the country, induced the Ms. Bahena de Sotelo into pleading to a disposition that would nevertheless lead to "virtually certain" deportation.  Given the stark similarities between Ms. Bahena de Sotelo's efforts to avoid deportation and acquiescence to a disposition when she was informed she stood a better chance to avoid deportation, she has demonstrated a single-minded focus in achieving a disposition that would avoid deportation.

Additionally, Ms. Bahena de Sotelo's family members were aware of the danger removal.  Accordingly, after interviewing multiple attorneys, they hired Mr. Shapiro to assist Ms. Bahena de Sotelo in avoiding removal.  Collectively, the family asked Mr. Shapiro about their Ms. Bahena de Sotelo's immigration status multiple times.  They were overjoyed when former counsel informed them that he had been successful in eliminating the stipulated order of removal provision.  These efforts undertaken by the family clearly indicate a "particular emphasis" on avoiding deportation.  Thus, she was prejudiced by her former counsel's misadvice.

> c.  **There is a reasonable probability Ms. Bahena de Sotelo would have rationally rejected the plea bargain and gone to trial in the absence of a favorable plea deal**

Finally, in *Rodriguez-Vega*, the Ninth Circuit held that prejudice can be shown by demonstrating "a reasonable probability that, even in the absence of a more favorable plea agreement, [the defendant] would have gone to trial." 797 F.3d at 789.  In reaching this conclusion, the panel observed that the defendant established a reasonable probability she would have gone to trial by "placing a particular emphasis" on avoiding deportation. *Id.* at 789-790.  A person may demonstrate this type of prejudice by explaining the noncitizen's ties to the US and what she would lose if deported. *Id.*  Pertinent to the analysis is the amount of time the noncitizen resided in the country, her family ties to the country, and

demonstrated concern about avoiding deportation. *Id.* Also, relevant here, are the reasons for not wanting to be deported.

In the matter at bar, Ms. Bahena de Sotelo has lived in the US for nearly 30 years. She is currently a lawful permanent resident who has no hopes of keeping her status at the end of her immigration proceedings.[8] This country has, for all intents and purposes become her home country. Further, at the time of the plea, Ms. Bahena de Sotelo had significant family ties to the US; she is married to a man with lawful status and together, they have four US Citizen children. When confronted with the possibility of being deported as a result of the current plea charge, she requested the stipulated order of removal provision be removed from the plea agreement. Additionally, her former attorney informed her family members that he had greatly minimized the risk of deportation. Moreover, Ms. Bahena de Sotelo still fears Mr. Quiroz; he has been tormenting her for many years and has caused the family great harm. It is completely rational that she would risk more jail time to avoid being sent to the same country as him. Consequently, these actions make it clear that a noncitizen defendant would rationally reject a plea deal that would lead to automatic deportation and risk a greater sentence to preserve the right to remain in the US with her family. *See St. Cyr*, 533 U.S. at 322 *and US v. Akinsade,* 686 F.3d 248, 255 (4th Cir.2012) ("We have ... found prejudice where the defendant, whose counsel misinformed him of deportation consequences, had significant familial ties to the United States and thus would reasonably risk going to trial instead of pleading guilty and facing certain deportation.") *as cited in Rodriguez-Vega*, 797 F.3d at 789.

---

[8] She has an application for relief under the UN Convention Against Torture pending before the immigration judge. The judge has continued proceedings to monitor the progress in this case. However, even if she prevails on this application she will not necessarily be allowed to remain in the US permanently, will not have a lawful status in the US, and does not prevent removal to another country, should that country be willing to accept her. *See* 8 CFR § 208.17(b); *and Rodriguez-Vega*, 797 F.3d 786–87 (the theoretical ability to apply for CAT relief does not change the conclusion) .

In sum, Ms. Bahena de Sotelo can satisfy the prejudice prong under any of the three factors outlined in *Rodriguez-Vega*.

### 3. Because Ms. Bahena de Sotelo's waiver plea was not voluntary, knowing, and intelligent, there is no bar to a collateral attack

Previously, this court denied the petition *inter alia* because Ms. Bahena de Sotelo signed a waiver of the right to collaterally attack the conviction. *See* Doc. 57, Order Denying Motion to Vacate at 9-11. Specifically, this court observed, a knowing and voluntary waiver of a statutory right is enforceable. *Id.* at 9 (*citing US v. Navarro-Botello*, 912 F.2d 318, 321 (9th Cir. 1990)). However, this court also stated that:

> The scope of a section 2255 waiver may be subject to potential limitations . . . Additionally, a waiver may be "unenforceable" and may not "categorically foreclose" a defendant from bringing section 2255 proceedings where a petitioner claims ineffective assistance of counsel challenging the voluntariness of his plea. *Washington v. Lampert*, 422 F.3d 864, 871 (9th Cir. 2005); [*US v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993)]; *see also US v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994).

*Id.* In determining whether the waiver is enforceable, the court must "determine what the defendant reasonably understood to be the terms of the agreement when [she] pleaded guilty," *US v. De la Fuente,* 8 F.3d 1333, 1337 (9th Cir. 1993) (footnote omitted), and then that she voluntarily and knowingly waived his rights as he understood them. *See US v. Charles*, 581 F.3d 927, 932 (9th Cir.2009) (Because defendant "reasonably could have believed that he retained his right to appeal his sentence to the extent that the district court determined he was a career offender," "[defendant] did not waive his right to appeal [that] determination.").

In the decision to deny the habeas petition, the court specifically held that Ms. Bahena de Sotelo had been found to have knowingly, voluntarily, intelligently given up her right to collaterally attack the conviction because she had been given the opportunity to discuss the waivers with her counsel. *See* Doc. 57, Order Denying Motion to Vacate at 9-11. While Ms. Bahena de Sotelo does not contend

1   she was given an opportunity to discuss the plea with counsel, she contests the

2   accuracy of her counsel's advice.  As this court observed and Mr. Shapiro

3   demonstrated, Ms. Bahena de Sotelo was told that she *could be* deported as a result

4   of her crime when caselaw mandates that she be warned that deportation was

5   "virtually certain."  Moreover, this error was compounded by the fact that her

6   counsel represented to her family that by removing the stipulated order of removal

7   provision, it gave her the "best chance [to] lawfully remain[] in this country."  The

8   representation that Ms. Bahena de Sotelo could have an immigration judge

9   "*consider the totality of the circumstances to fight her possible removal and/or*

10  *deportation*" was woefully inaccurate and was part of her calculous in accepting the

11  plea.  *See* Doc. 36, Sentencing Memorandum at 4.  Thus, both things can be correct,

12  the court can give the defendant sufficient time to discuss the effects of the plea *and*

13  defense counsel can mislead the client on the impact of the plea.  No amount of

14  time to discuss the consequences of the plea will remedy inaccurate advice.

15  Reliance on this incorrect advice must negate a finding that her plea was knowing,

16  voluntary, and intelligent. Consequently, this court should find that Ms. Bahena de

17  Sotelo's waiver to collaterally attack her conviction is unenforceable and allow her

18  claim to go forward.

19          **V.    CONCLUSION**

20          In sum, the documented evidence in this case is clear, this court should be

21  able to grant relief without an evidentiary hearing.  In the alterative, taking these

22  allegations as true, as this court must do at this stage of the litigation, Ms. Bahena

23  de Sotelo must be allowed to prove her allegations at an evidentiary hearing.

24  ///

25  ///

26  ///

27  ///

28  ///

Respectfully Submitted,

Dated: October 24, 2017          By _____/s/ Andres Ortiz_____
                                        Andres Ortiz, Esq.
                                        Shouse Law Group
                                        Attorney for Gloria Bahena de Sotelo

1

## **TABLE OF CONTENTS**

2

Exhibit A- Declaration of the Defendant/Petitioner

Exhibit B- Documents Relating to the Insurance Claim

Exhibit C- Declaration of Adelina Sotelo

Exhibit D- Email Exchange Between Adelina and Mr. Shapiro

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    UNITED STATES DISTRICT COURT

2    SOUTHERN DISTRICT OF CALIFORNIA

3

4    UNITED STATES OF AMERICA,        Civil No.

5         Plaintiff,                  Criminal No.  12-CR-0061-JAH

6         v.                          **CERTIFICATE OF SERVICE**

7    GLORIA BAHENA DE SOTELO,

8         Defendant.

9

10        I, Andres Ortiz, am a citizen of the United States and am at least eighteen years of age.  I

11   certify that the foregoing pleading has been electronically served this day upon counsel for the

12   Government.

13

14   October 25, 2017                    Respectfully submitted,

15

16                                   By

17                                       */s/ Andres Ortiz*
                                         Andres Ortiz, Esq.
18                                       Attorney for Ms. Bahena de Sotelo

19

20

21

22

23

24

25

26

27

28

23